A95A0974. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY v. BISHOP.
(464 SE2d 9)

McMURRAY, Presiding Judge.

Plaintiff Bishop, who was formerly employed as an insurance salesman by defendant Georgia Farm Bureau Mutual Insurance Company, filed this action to recover unpaid wages and attorney fees. A

jury trial resulted in a verdict in favor of plaintiff and judgment in the amount of $8,696.79 for damages plus $18,740.76 for attorney fees, costs, and expenses of litigation. Defendant appeals and submits three enumerations of error which question the sufficiency of the evidence to authorize various portions of the verdict returned by the jury. *Held*:

1. There was a succession of written contracts between the parties under which plaintiff was to be compensated based on two variables, the net premiums paid for the previous year on the accounts assigned to plaintiff and the loss ratio of the assigned accounts. The contracts did not specify the amount of premiums to be generated by the assigned policies or the loss ratio of those accounts. Plaintiff's initial assignment with defendant was to Fayette County from January 1986 until the fall of 1987. During this initial interval, plaintiff was paid less because no adjustment was made to his salary for the loss ratio of the assigned accounts.

Plaintiff was then transferred to south Fulton County. In connection with this transfer, plaintiff was promised that he would be paid based on the assignment to him of accounts producing premiums in excess of $300,000 per year. In fact, plaintiff's compensation after the transfer was based on accounts which had generated premiums of less than $255,000, albeit in February 1988, defendant began to pay plaintiff the loss ratio adjustment and did so during the remainder of plaintiff's employment with defendant.

Defendant's first two enumerations of error complain of the denial of its motions for directed verdict as to issues arising from the failure to pay the loss ratio adjustment and from the failure to pay on a larger book of business after the transfer to Fulton County. A similar mutual deviation or waiver argument is presented in support of both of these contentions. See OCGA § 13-4-4. Basically, defendant relies upon evidence of plaintiff's acquiescence in the reduced pay by continuing to work without complaint after receiving the lower pay. The written contract between the parties was subject to termination after a brief notice, and defendant suggests, in essence, the creation of new contracts at the lower wages which are binding upon plaintiff.

There is evidence to support defendant's position. Plaintiff clearly had knowledge of the failure to pay the loss ratio adjustment, and there is some evidence that plaintiff had sufficient information to have discovered that the south Fulton salary was based on a base of accounts with less premiums than agreed. The crux of the matter, though, is that defendant's evidence was not uncontroverted.

There is also ample evidence supporting plaintiff's claim which authorizes the verdict returned by the jury. In this regard, we note that plaintiff presented evidence that he complained to his agency manager and to his district manager concerning the defendant's fail-

ure to pay the loss ratio adjustment and was told of an informal company policy that a new agent did not receive the loss ratio adjustment until he had been with the company two years. This was in conflict with the representations which had been made to plaintiff during employment negotiation and under plaintiff's evidence that this was not the actual policy of the company as to career agents such as plaintiff, albeit there was a policy of this nature with regard to trainee agents. Plaintiff was advised by his agency manager not to rock the boat and thereafter confined most of his complaints concerning the shortfall to the agency manager, although shortly before he left the company he did complain to the general manager about defendant's failure to pay the loss ratio adjustment. There is also evidence that plaintiff did not have sufficient information to determine that his compensation after the transfer to Fulton County was based on the assignment of accounts which produced less than the agreed level of premiums.

The question we ultimately reach requires a determination of the intent of the parties. The question of whether there has been a mutual and intended departure so as to make practically a new agreement is generally a matter for a jury. *Travelers Ins. Co. v. Adkins*, 200 Ga. App. 278, 282 (4) (d) (407 SE2d 775). "A party may by his conduct waive a legal right but where the only evidence of an intention to waive is what a party does or forbears to do, there is no waiver unless his acts or omissions to act are so manifestly consistent with an intent to relinquish a then-known particular right or benefit that no other reasonable explanation of his conduct is possible. *Marsh v. Wright Mem. Mortuary*, 197 Ga. App. 736 (399 SE2d 232); *Jones v. Roberts Marble Co.*, 90 Ga. App. 830 (2) (84 SE2d 469)." *MNM 5, Inc. v. Anderson/6438 Northeast Partners*, 215 Ga. App. 407, 409 (2), 410 (451 SE2d 788). In our view, the evidence in the case sub judice does not demand a conclusion that plaintiff accepted a revision of his contract with defendant. There is evidence in regard to one portion of his claim that he complained and sought an appropriate remedy while continuing his employment. As to the other portion of his claim, there is evidence that plaintiff did not know and could not reasonably have discovered the shortfall in his compensation. Under these circumstances, a directed verdict in favor of defendant was not appropriate on these issues. *Harris v. Tatum*, 216 Ga. App. 607, 608 (1) (b), 609 (455 SE2d 124).

2. The remaining enumeration of error complains of the denial of defendant's motion for directed verdict on plaintiff's claim for attorney fees. We hold that this enumeration of error lacks merit. There was evidence from which the jury could conclude that defendant wilfully failed to pay plaintiff in accordance with the contracts under which he was employed and refused his demands to be paid the loss ratio adjustment in accordance with the contracts. Defendant's asser-

tions concerning a policy that loss ratio adjustments would be paid only after two years of employment were contradicted by plaintiff's evidence, and it is never explained how defendant's "policy" would serve to dissolve plaintiff's rights under the employment contracts. The jury was authorized to conclude that there was no bona fide controversy between the parties. The award of attorney fees was authorized by the evidence. *Citizens & Southern Trust Co. v. Hicks*, 216 Ga. App. 338, 339 (2), 340 (454 SE2d 207); *Fine & Block v. Evans*, 201 Ga. App. 294, 296 (411 SE2d 73); *Clements v. Barnes*, 197 Ga. App. 120, 121 (2) (397 SE2d 560).

*Judgment affirmed. Blackburn, J., concurs. Andrews, J., concurs in the judgment only.*

Decided October 26, 1995 —
Reconsideration denied November 8, 1995 — 

*Groover & Childs, Denmark Groover, Jr.*, for appellant.
*Nelson & Hill, Janet E. Hill, Sujata G. Winfield*, for appellee.