**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 20, 2017**

# In the Court of Appeals of Georgia

A17A0280. CALDWELL et al. v. CHURCH.

McFADDEN, Presiding Judge.

Under the terms of a written contract that contains a merger clause, Emil and Joanne Caldwell sold all of the assets of a business, a bar and grill, to Virginia Church. Then, on the basis of a claim that Church had breached an alleged contemporaneous oral agreement modifying that written contract, the Caldwells reentered the premises, ejected Church, changed the door locks, and resumed operating the business as their own.

Church then brought this action. She asserts claims for breach of contract and fraud against Emil Caldwell and claims for trespass, conversion, attorney fees, and punitive damages against both Caldwells. The Caldwells answered and counterclaimed for breach of contract. The trial court granted summary judgment to

Church on her breach of contract claim; granted judgment on the pleadings to Church on her trespass, conversion, attorney fees, and punitive damages claims; dismissed the Caldwells' counterclaim for failure to state a claim; and denied the Caldwells' motion for a protective order as to the further deposition of Emil Caldwell. The Caldwells appeal, challenging the trial court's rulings.

The trial court correctly found that the Caldwells' claim of a breach of the alleged contemporaneous oral agreement was meritless. So he properly granted summary judgment in favor of Church on her breach of contract claim. The trial court also correctly ruled that the pleadings established that Church was entitled to judgment on her trespass and conversion claims. But the trial court erred in entering judgment on the pleadings as to Church's attorney fees and punitive damages claims because those are matters for a trier of fact to decide. The trial court correctly dismissed the counterclaim because it rested on the Caldwells' meritless breach-of-the-alleged-oral-agreement argument and therefore failed to state a claim for which relief could be granted. Finally the trial court properly denied the Caldwells' motion for a protective order and allowed Church, in furtherance of her claim for punitive damages, to conduct discovery of Emil Caldwell's net worth. Accordingly, we affirm in part and reverse in part the rulings of the trial court.

1. *Summary judgment.*

Summary judgment is appropriate when the moving party can "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law[.]" OCGA § 9-11-56 (c).

> Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

*Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) (citations and punctuation omitted).

So viewed, the evidence shows that Church and Emil Caldwell entered into a written agreement for Church to purchase from Caldwell all of the assets of a business known as Sugar Daddy's Bar and Grill in McDonough, Georgia. The contract provided for a $100,000 purchase price, set forth a payment schedule, established that the closing date was September 15, 2014, and stated that on that closing date all of the "inventory, equipment, and fixtures to be transferred will be located at [the business address] and will not be removed without the written consent

3

of the Buyer." The contract also included a merger clause entitled "Entire Agreement," which provided:

> This Agreement constitutes the sole and only agreement between Buyer and Seller respecting the Business or the sale and purchase of it. This Agreement correctly sets forth the obligations of Buyer and Seller to each other as of its date. Any additional agreements or representations respecting the Business or its sale to Buyer not expressly set forth in this Agreement are null and void, unless required by law.

Pursuant to the agreement, Church made payments and Caldwell transferred the business to her on September 15, 2014. Church operated the bar and grill from that date until January 2015. During that time, she did not have a liquor license in her name, but operated the business with the liquor license in Joanne Caldwell's name.

On January 10, 2015, the Caldwells went to the bar and grill, ordered the patrons to leave, ejected Church from the premises, and changed the door locks. Thereafter, the Caldwells denied Church access to the business, prohibited her from operating the business, and began operating the business as their own. The Caldwells operated the bar and grill until May 23, 2015, when they closed the business. The Caldwells subsequently removed inventory and equipment from the business premises and placed the items in their private storage facility.

In moving for summary judgment on her breach of contract claim against Emil Caldwell, Church cited the contract clause providing that the business inventory and equipment "will not be removed without the written consent of [Church]" and pointed to specific deposition testimony of the Caldwells admitting that Emil Caldwell had violated that contract provision by removing equipment from the business premises without Church's written consent. Because Church properly supported her motion for summary judgment with specific evidence in the record, Emil Caldwell, as the adverse party, "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in [OCGA § 9-11-56], must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." OCGA § 9-11-56 (e). See also *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991) (if the party moving for summary judgment has discharged its burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue).

In response, Emil Caldwell has failed to point to any evidence showing that there is a genuine issue for trial. Rather, he argues that although the written contract did not mention licenses, permits, or insurance, Church had orally agreed at the time

5

the contract was entered into and when business was turned over to her on September 15, 2014, to obtain a liquor license, business permits, and insurance in her name; that she failed to do so; and that a jury could therefore find that Emil Caldwell retained title to the business under that oral modification to the written contract. In support of this argument, Caldwell points to deposition testimony of his wife and Church purportedly showing the existence of such oral representations concerning a liquor license, permits, and insurance.

As an initial matter, even if we assume that there is a genuine issue of material fact as to whether the parties entered into an alleged contemporaneous oral agreement modifying the written contract as Caldwell claims, he has still pointed to no evidence that the purported oral agreement also changed the requirement that he obtain Church's written consent to remove equipment from the business premises or that it added new provisions allowing him to evict Church and repossess the business and all of its assets upon an alleged breach of that purported oral modification.

More fundamentally, contrary to Caldwell's argument, the alleged contemporaneous oral agreement cannot be used to change the terms of the written contract.

6

> Where a conflict exists between oral and written representations, it has long been the law in Georgia that if the parties have reduced their agreement to writing, all oral representations made antecedent to execution of the written contract are merged into and extinguished by the contract and are not binding upon the parties. In written contracts containing a merger clause, prior or contemporaneous representations that contradict the written contract cannot be used to vary the terms of a valid written agreement purporting to contain the entire agreement of the parties, nor would the violation of any such alleged oral agreement amount to actionable fraud.

*First Data POS v. Willis*, 273 Ga. 792, 794-795 (2) (546 SE2d 781) (2001) (citations and punctuation omitted).

In this case, as recounted above, the written contract contains a merger clause providing that it is the sole agreement of the parties, that it correctly sets forth the parties' obligations, and that any other agreements or representations not expressly set forth in the contract are null and void. Accordingly, Caldwell's argument that an alleged contemporaneous oral agreement modified the terms of the written contract is without merit. Because Caldwell has failed to point to evidence giving rise to a triable issue on Church's breach of contract claim against him, the trial court did not err in entering summary judgment on that claim.

2. *Judgment on the pleadings.*

The Caldwells contend that the trial court erred in entering judgment on the pleadings on Church's claims for trespass, conversion, punitive damages, and attorney fees. We agree that the trial court erred in entering judgment as to the punitive damages and attorney fees claims. But the court properly entered judgment on the pleadings on Church's conversion and trespass claims.

> On appeal from a grant of judgment on the pleadings, we conduct a de novo review of the trial court's order to determine whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law. The grant of a motion for judgment on the pleadings under OCGA § 9-11-12 (c) is proper only where there is a complete failure to state a cause of action or defense. For purposes of the motion, all well-pleaded material allegations by the nonmovant are taken as true, and all denials by the movant are taken as false. But the trial court need not adopt a party's legal conclusions based on these facts.

*Hall v. Sencore, Inc.*, 302 Ga. App. 367 (691 SE2d 266) (2010) (citations and punctuation omitted).

(a) *Trespass.*

In order to be entitled to judgment on the pleadings on her trespass claim, Church must show that the undisputed facts as alleged in her complaint and the Caldwells' answer entitle her to judgment as a matter of law and that there is a complete absence of any defense to the claim. Church's complaint set forth a claim

for trespass to personal property, alleging that she purchased the inventory and equipment of the business and that the Caldwells intentionally interfered with her possession of that property by changing the locks to the business and by operating the business using her property without her permission. In their answer, the Caldwells admitted that they unilaterally changed the locks and operated the business. But the Caldwells also denied that the personal property belonged to Church, alleging in their answer that they changed the locks and took over the business because Church had failed to comply with an oral agreement to get a liquor license, business license, food permit, and insurance in her name.

"The owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." OCGA § 51-10-1. "Interference with the mere possession of a chattel, even if the possession is without title or is wrongful, shall give a right of action to the possessor, except as against the true owner or the person wrongfully deprived of possession." OCGA § 51-10-2. "Any unlawful abuse of or damage done to the personal property of another constitutes a trespass for which damages may be recovered." OCGA § 51-10-3. Where "the property alleged to have been taken was personalty, and alleged to have been taken without the owner's consent, such action is tortious and a trespass for which damages may be recovered."

9

*Lowery v. McTier*, 99 Ga. App. 423 (1) (108 SE2d 771) (1959) (citations omitted). "The gist of such an action of trespass [to personal property] is the injury done to the possession of the property." *Duncan v. Ellis*, 63 Ga. App. 687, 689 (11 SE2d 841) (1940) (citations omitted). "The action of trespass to personalty is concurrent with the action of . . . conversion, although the two actions are not entirely coextensive. Trespass will doubtless lie for acts of interference with goods[.]" *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 260 (1) (356 SE2d 877) (1987) (citations and punctuation omitted).

Here, even if Church promised to obtain licenses and insurance but failed of that promise, that failure would not give the Caldwells any right to take possession of Church's personal property. Indeed, the Caldwells have pointed to no allegations in their pleadings that justified their unauthorized takeover of Church's property.

Moreover, "[i]n considering a motion for judgment on the pleadings, a trial court may consider exhibits attached to and incorporated into the pleadings, including exhibits attached to the complaint or the answer." *Lapolla Indus. v. Hess*, 325 Ga. App. 256, 258 (2) (750 SE2d 467) (2013) (citations omitted). In this case, the written contract between Church and Emil Caldwell was attached to, and incorporated by reference into, the complaint. See OCGA § 9-11-10 (c); *Shreve v. World*

10

*Championship Wrestling*, 216 Ga. App. 387, 388 (1) (454 SE2d 555) (1995) (document attached to pleading was part of pleading when it was incorporated by reference). That contract plainly shows that Church acquired the property in question and it contains no provisions requiring her to obtain any licenses, permits, or insurance. As discussed above, the written contract contained a merger clause establishing that it constituted the parties' entire agreement and therefore its terms could not be modified by an alleged contemporaneous oral agreement. See *First Data*, supra. Consequently, nothing in the pleadings shows that the Caldwells were authorized to take possession of Church's property based on an alleged failure to acquire licenses, permits, or insurance. Considering the contract incorporated into the pleadings along with the Caldwells' admissions in their answer, the trial court did not err in entering judgment on the pleadings as to Church's trespass to personal property claim.

(b) *Conversion.*

It is well established that

conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation. Thus, any distinct act of dominion and control wrongfully asserted over

11

another's personal property, in denial of his right or inconsistent with his right, is a conversion of such property.

*Williams v. National Auto Sales*, 287 Ga. App. 283, 285 (1) (651 SE2d 194) (2007) (citations and punctuation omitted). In her complaint, Church alleged that the Caldwells wrongfully asserted control over her property by ejecting her from the premises, changing the locks on the business, and using her personal property, including equipment and inventory, to operate the business without her permission. In their answer, the Caldwells admitted to forcibly removing Church from the premises, changing the locks, and operating the business without Church's permission. The Caldwell's claim that their forcible taking of Church's property was authorized by her failure to obtain licenses and insurance; but as discussed above, that claim is specious and provides no justification for the wrongful taking of Church's personal property. Because the pleadings show undisputed facts establishing Church's conversion claim, the trial court correctly entered judgment on that claim.

(c) *Attorney fees.*

The trial court granted judgment on the pleadings on Church's claim for bad faith attorney fees under OCGA § 13-6-11. Such a judgment was improper because

an award of attorney fees under that statute is a matter for a jury or a court sitting as a trier of fact.

OCGA § 13-6-11 provides: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, *the jury* may allow them." (Emphasis supplied.) "As indicated by the plain language of the statute, the determination of whether there has been bad faith in support of an award pursuant to OCGA § 13-6-11 is normally an issue for a jury." *Metro Atlanta Task Force for the Homeless v. Ichthus Community Trust*, 298 Ga. 221, 238 (5) (780 SE2d 311) (2015) (citation omitted). Accord *Rossee Oil Co. v. BellSouth Telecommunications*, 212 Ga. App. 235, 236 (441 SE2d 464) (1994) ("Questions of bad faith, stubborn litigiousness, and unnecessary expense, under OCGA § 13-6-11, are generally questions for the factfinder.") (citation and punctuation omitted). Consequently, "because both the liability for and amount of attorney fees pursuant to OCGA § 13-6-11 are solely for the jury's determination, a trial court is not authorized to grant summary judgment in favor of a claimant therefor." *Covington Square Assoc. v. Ingles Mkts.*, 287 Ga. 445, 446 (696 SE2d 649) (2010) (citations omitted).

13

"Although the trial court may grant attorney fees or litigation expenses under OCGA § 13-6-11 where it sits as the trier of fact, it is not a trier of fact on a motion for summary judgment." Id. at 448 (citations and punctuation omitted).

Likewise, a trial court is not a trier of fact on a motion for judgment on the pleadings. As noted above, such a motion only requires the court to decide "whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law." *Southwest Health & Wellness v. Work*, 282 Ga. App. 619, 623 (2) (639 SE2d 570) (2006) (citation omitted). Accordingly, in this case, the trial court erred by summarily granting judgment on the pleadings on Church's claim for attorney fees pursuant to OCGA § 13-6-11.

(d) *Punitive damages.*

The trial court also erroneously granted judgment on the pleadings on Church's claim for punitive damages, another matter that must be decided by a jury or a court sitting as the trier of fact.

OCGA § 51-12-5.1 (b) provides: "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness,

oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (d) further provides:

> (1) An award of punitive damages must be specifically prayed for in the complaint. In any case in which punitive damages are claimed, the *trier of fact* shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made. This finding shall be made specially through an appropriate form of verdict, along with the other required findings. (2) If it is found that punitive damages are to be awarded, the trial shall immediately be recommenced in order to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case. It shall then be the duty of the *trier of fact* to set the amount to be awarded according to subsection (e), (f), or (g) of this Code section, as applicable.

(Emphasis supplied.)

By its plain language, this code section provides that a determination of punitive damages must be made by the trier of fact, and thus "[t]he issue of punitive damages is ordinarily for the jury[.]" *Morales v. Webb*, 200 Ga. App. 788, 790 (409 SE2d 572) (1991) (citation omitted); accord *Associated Health Systems v. Jones*, 185 Ga. App. 798, 802 (2) (366 SE2d 147) (1988); see also *Beal v. Braunecker*, 185 Ga. App. 429, 430 (1) (364 SE2d 308) (1987) (whether the facts of a case shall constitute aggravating circumstances supporting an award of punitive damages is a question for the jury and not the court). Because the issue of punitive damages must be decided

15

by a jury or a court sitting as the trier of fact, the trial court in this case, which was not sitting as a trier of fact when it ruled on the motion for judgment on the pleadings, erred in summarily granting judgment on Church's claim for punitive damages.

3. *Dismissal of counterclaim.*

The Caldwells argue that the trial court erred in granting Church's motion to dismiss their counterclaim for failure to state a claim pursuant to OCGA § 9-11-12 (b) (6). We disagree.

> A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. In other words, if, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient. On appeal, we review de novo a trial court's determination that a pleading fails to state a claim upon which relief can be granted, construing the pleadings in the light most favorable to the plaintiff and with any doubts resolved in the plaintiff's favor.

*Development Auth. of Columbus v. Four JS Family, LLLP*, 340 Ga. App. 474, 476 (1) (798 SE2d 15) (2017) (citations and punctuation omitted). "When considering a motion to dismiss for failure to state a claim, a trial court may consider exhibits attached to and incorporated into the complaint and answer." *Minnifield v. Wells*

16

*Fargo Bank, N. A.*, 331 Ga. App. 512, 514 (2) (771 SE2d 188) (2015) (citation omitted).

In their counterclaim, the Caldwells set forth a breach of contract claim based on their allegations that Church breached the alleged contemporaneous oral agreement requiring her to obtain licenses, permits, and insurance in her name. However, there is no state of facts which could be proved in support of this claim because, as explained above, the written contract, attached to the complaint and expressly referenced by the Caldwells in their counterclaim, contained a merger clause providing that the contract constituted the entire agreement between the parties. That contract can not be modified by the purported oral agreement relied upon by the Caldwells in their counterclaim. See *First Data*, supra. Accordingly, the trial court properly granted the motion to dismiss the counterclaim for failing to state a claim upon which relief can be granted. See *Viola E. Buford Family Ltd. Partnership v. Britt*, 283 Ga. App. 676, 677 (642 SE2d 383) (2007).

4. *Protective order.*

The Caldwells complain that the trial court erred in denying their motion for a protective order under OCGA § 9-11-26 (c) prohibiting any further deposition of Emil Caldwell regarding his net worth. "OCGA § 9-11-26 (c) does establish a general

17

statutory basis for the entry of protective orders limiting or curtailing discovery under appropriate circumstances, provided such limitations do not have the effect of frustrating and preventing legitimate discovery." *Christopher v. State of Ga.*, 185 Ga. App. 532, 533 (364 SE2d 905) (1988) (citation and punctuation omitted). Such protective orders, which are within the discretion of the trial judge, "are intended to be protective – not prohibitive – and, until such time as the court is satisfied by substantial evidence that bad faith or harassment motivates the discoveror's action, the court should not intervene to limit or prohibit the scope of pretrial discovery." *Bullard v. Ewing*, 158 Ga. App. 287, 291 (279 SE2d 737) (1981) (citations, punctuation, and emphasis omitted). Here, the Caldwells have not shown that bad faith or harassment motivates Church in seeking such discovery or what specific prejudice might result from the deposition. Rather, they simply conclude that the scope of discovery must be restricted to prevent an unreasonable intrusion into their privacy. However, mere "conclus[ory] statements, bereft of facts will not support the imposition of limitations on civil discovery." *Christopher*, supra (citation omitted). The Caldwells have failed to show that the trial court abused its discretion in denying their motion for protective order prohibiting discovery.

*Judgments affirmed in part and reversed in part. Branch and Bethel, JJ., concur.*